### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

THOMAS KIRSCHLING,

                 Plaintiff,

      v.

ATLANTIC CITY BOARD OF
EDUCATION,

                 Defendant.

Civil No. 11-4479 (NLH/JS)

**OPINION**

**APPEARANCES**:

Robert P. Merenich, Esquire
Gemmel, Todd & Merenich, P.A.
767 Shore Road
P.O. Box 296
Linwood, New Jersey 08221
    *Attorney for Plaintiff Thomas Kirschling*

Cynthia E. Ringel, Esquire
Erin Leigh Henderson, Esquire
Peter P. Perla, Esquire
Jasinski, P.C.
60 Park Place, 8th Floor
Newark, New Jersey 07102
    *Attorney for Defendant Atlantic City Board of Education*

**HILLMAN, District Judge:**

    This matter comes before the Court by way of Defendant Atlantic City Board of Education's motion [Doc. No. 58] for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

    For the reasons expressed below, Defendant's motion will be granted.

## I.  <u>JURISDICTION</u>

Plaintiff brings this action against Defendant Atlantic City Board of Education ("Defendant" or "the Board") asserting claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. ANN. § 10:5-1, <u>et</u> <u>seq.</u>  Plaintiff originally filed suit against the Board in the Superior Court of New Jersey, Atlantic County, Law Division.  The Board subsequently removed the action to this Court pursuant to 28 U.S.C. § 1441, <u>et</u> <u>seq.</u>, asserting that original jurisdiction exists over Plaintiff's state law claim based on diversity of citizenship. See 28 U.S.C. § 1332.

On November 15, 2011, the Court issued an Order directing the defendant to clarify its assertion of diversity jurisdiction. In response, the Board filed an amended notice of removal.  The Court having been satisfied that complete diversity of citizenship exists[1] and that the exercise of jurisdiction here is

---

[1]    The amended notice of removal avers that as of the filing of the complaint, "Plaintiff is not a citizen of the State of New Jersey, but rather is likely a citizen of either Florida or Maryland." Amended Notice of Removal [Doc. No. 10] ¶ 9.)  The record at this stage of the litigation demonstrates that Plaintiff is a citizen of the state of Florida.  (See Dep. Tr. of Thomas Kirschling, Ex. I to Pl.'s Opp'n, 6:7-16, 8:24-25.) and that the Board is a citizen of the state of New Jersey, and thus complete diversity of citizenship exists between the parties. (Id. ¶ 9.)  The Board also adequately demonstrated that the amount in controversy exceeds the statutory minimum of $75,000 as Plaintiff seeks damages in excess of $900,000, and therefore all the requirements of 28 U.S.C. § 1332 are met in

proper,[2] the case proceeded through discovery to the filing of the Board's motion for summary judgment.

## II.   BACKGROUND

The Board "is a public entity responsible for the education and well-being of more than 7,000 students in the Atlantic city area." (Def.'s Statement of Undisputed Material Facts [Doc. No. 58-5] (hereinafter, "Board's SOF"), ¶ 1; Pl.'s Reply to Statement of Undisputed Material Facts [Doc. No. 64] (hereinafter, "Pl.'s Reply SOF"), ¶ 1.)  Plaintiff, a Caucasian[3] male, is a former

———————————

this case. (Id.)

[2]   Title 28, United States Code, Section 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  However, as Defendant has properly pointed out, 28 U.S.C. § 1441(b) is procedural, not jurisdictional, in nature.  While "this case was technically not removable under 28 U.S.C. § 1441" because the Board is a citizen of New Jersey - the state in which the action was brought, see Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 90 n.3 (3d Cir. 1999), this defect is waived if not raised within thirty days after removal.  Since Plaintiff did not file a motion to remand in this matter within that time period, the Court may now exercise jurisdiction and sua sponte remand by the district court based on this procedural defect is not authorized under 28 U.S.C. § 1447(c) where diversity jurisdiction is otherwise satisfied.  In re FMC Corp. Packaging Sys. Div., 208 F.3d 445, 451-452 (3d Cir. 2000); Korea Exchange Bank v. Trackwise Sales, 66 F.3d 46, 50 (3d Cir. 1995).

[3]   The Court will use the terms "Caucasian" and "white" interchangeably in this opinion to reflect the similar use of

employee of the Board who was hired in July 2000 as the Assistant Superintendent for Human Resources – a position he held until July 31, 2009.  (Board's SOF ¶¶ 4-5, 8; Pl.'s Reply SOF ¶¶ 4-5, 8.)  Approximately two years after his employment by the Board ended, Plaintiff filed the complaint in this action alleging that the Board violated the NJLAD when it constructively discharged Plaintiff because of his Caucasian race.  (Board's SOF ¶¶ 18-19; Pl.'s Reply SOF ¶¶ 18-19.)

In his complaint, Plaintiff alleges that he was constructively discharged "because, as was directly told to Plaintiff, the [Board] sought to place a black (African-American) in his position" in order to "ensure the hiring of African-Americans with personal, familial and financial ties to ... African-American Board members" and to "increase the number of African-American employees" in the Atlantic City School District. (Compl., Ex. A to Amended Notice of Removal, [Doc. No. 10-1] ¶¶ 8-9.)  Plaintiff further alleges that the Board "replaced Plaintiff with an African-American female."  (Id. ¶ 10.)  The Board, however, denies that it discriminated against Plaintiff on the basis of his race and disputes Plaintiff's characterization of his separation from employment with the Board on July 31,

these terms by the parties.

4

2009.  The Board contends that "[t]oward the end of his 2007 employment contract, Plaintiff retired and tendered his resignation."  (Board's SOF ¶ 11; see also Pl.'s July 13, 2009 Resignation Letter, Ex. K to Certification of Peter Perla, Esq. [Doc. No. 58-4].)

Plaintiff denies that his "resignation was done voluntarily" and contends that he was "forced to retire and did so a year before the expiration of his three year contract."  (Pl.'s Reply SOF ¶ 11.)  Plaintiff contends that ultimately he believed that the Board "would stop at [nothing] to remove him" and therefore, he resigned his position effective July 31, 2009.  (Pl.'s Counter Statement of Material Facts [Doc. No. 64] (hereinafter, "Pl.'s Counter SOF"), ¶ 97.)  According to Plaintiff's testimony, his belief that the Board would stop at nothing to remove him stemmed from the following: (1) he was told that the Board "wanted a black administrator in his position" and informed him "of the individual who would replace him"; (2) he was told by a Board member that the Board member was "going to get him"; (3) he was subjected to "so much unfounded criticism" for his implementation of a drug testing policy that the Superintendent attended "Personnel Committee meetings to act as a buffer" between Plaintiff and Board members on the Committee; (4) he was

subjected to "rehashed challenges to his accumulated sick, comp and vacation time" despite previous Board audits on the issue; (5) he was "improperly stripped of ... over 120 accumulated sick and vacation days"; (6) he was subjected to three memoranda in February and March of 2009 which "he knew would eventually be mutated into criminal allegations"; (7) he observed that the Board "ignored exculpatory documents"; (8) he was suspended from his position with pay on March 4, 2009; (9) he was "subjected to public ridicule in both the Atlantic City Press and radio"; and (10) he was "so riddled with anxiety and stress that he" sought medical treatment in March of 2009.  (Id. ¶ 97) (citing Dep. Tr. of Thomas Kirschling, Ex. I to Pl.'s Opp'n, 381:21-383:23).[4]

---

[4]    With respect to paragraph 97 of Plaintiff's Counter Statement of Material Facts, the Board admits only the last clause of that paragraph asserting that "Plaintiff resigned his position with the District effective July 31, 2009[.]"  (Def.'s Resp. to Pl.'s Counter SOF [Doc. No. 68-1] (hereinafter, "Board's Resp. CSOF"), ¶ 97.)  The Board objects to the remainder of paragraph 97 on the grounds that it contains inadmissible hearsay, is immaterial, improperly characterizes testimony, is taken out of context, and does not stand for the proposition asserted by Plaintiff.  (Id.)

III. **DISCUSSION**

    A.   **Summary Judgment Standard**

    In the present motion, the Board seeks the entry of summary judgment in its favor on Plaintiff's sole claim under the NJLAD.[5] Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56).

---

[5]   In its amended answer to Plaintiff's complaint, the Board filed a three count counterclaim against Plaintiff for theft of public funds, common law fraud, and breach of fiduciary duty. (Def.'s Counterclaim [Doc. No. 20] ¶¶ 1-36.)  Neither party's motion papers meaningfully address the status of the Board's counterclaims at this time.
    On March 27, 2014, the Board submitted a letter [Doc. No. 69] to the Court indicating that if any portion of Plaintiff's case survived summary judgment, the Board would pursue these counterclaims at trial.  The Board further informed the Court that if the Board's motion for summary judgment were granted in its favor, then the Board would dismiss the counterclaims with prejudice.  In light of the Court's decision to grant summary judgment in favor of the Board, it appears that the Board's counterclaims are no longer at issue in this litigation.  The Court will enter an order consistent with the information provided by the Board and dismiss these counterclaims with prejudice.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." (citation omitted); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary

8

judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof.") (citing Celotex, 477 U.S. at 325).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment may not rest upon the mere allegations or denials of the ... pleading[s.]" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (internal quotations omitted). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.

**B.    Reverse Race Discrimination Under the NJLAD**

As the New Jersey Supreme Court[6] has long recognized, "New Jersey has a strong interest in maintaining 'discrimination-free workplace[s]' for workers." Cutler v. Dorn, 955 A.2d 917, 923 (N.J. 2008) (citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445, 452 (1993)).  The NJLAD makes it an unlawful

> [f]or an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, sex ... of any individual, ... to refuse to hire or employ or to bar or to discharge ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

Lehmann, 626 A.2d at 452 (citing N.J. STAT. ANN. § 10:5–12(a)).[7]

To prove employment discrimination under the NJLAD, New

_____

[6]    As a federal court sitting in diversity, the Court must apply New Jersey state substantive law to determine whether the Board is entitled to summary judgment on Plaintiff's NJLAD claim.  See Liggon–Redding v. Estate of Sugarman, 659 F.3d 258, 262 (3d Cir. 2011) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L.Ed. 1188 (1938)).  Accordingly, the Court is bound by decisions of the New Jersey Supreme Court and is guided "by the rulings of the lower New Jersey appellate courts, which may provide 'indicia of how the state's highest court might decide' an issue."  Polizzi Meats, Inc. v. Aetna Life & Cas. Co., 931 F. Supp. 328, 340 (D.N.J. 1996) (citing Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1167 (3d Cir. 1981)).

[7]    The current version of Section 10:5-12(a) now also prohibits discrimination or harassment based on civil union status, domestic partnership status, genetic information, gender identity or expression, and disability.  N.J. STAT. ANN. § 10:5-12(a) (West 2013).

Jersey courts have adopted the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973).[8] See, e.g., Victor v. State, 4 A.3d 126, 140-141 (N.J. 2010) (observing that "employment discrimination claims [under the NJLAD] proceed in accordance with the McDonnell Douglas burden-shifting paradigm"); Viscik v. Fowler Equip. Co., 800 A.2d 826, 833 (N.J. 2002) (recognizing that New Jersey "courts have adopted the burden-shifting framework articulated in McDonnell Douglas ... to prove disparate treatment under LAD").

"[T]he first step in [the McDonnell Douglas] analysis requires plaintiff to demonstrate that he or she can meet each of the elements of the prima facie case." Victor, 4 A.3d at 141. However, "[t]here is no single prima facie case that

_____

[8]      The burden-shifting framework of McDonnell Douglass applies in cases where the plaintiff seeks to prove discrimination by way of circumstantial evidence.  By contrast, "[w]hen an employee attempts to prove discrimination by direct evidence, the quality of evidence required to survive a motion for summary judgment is that 'which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'  In the context of a claim for wrongful discharge, an employee must show 'direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion' ... in deciding to terminate his or her employment."  Bergen Commercial Bank v. Sisler, 723 A.2d 944, 954 (N.J. 1999) (citations omitted).
     Although Plaintiff classifies his evidence as "direct", he is clearly proceeding under the McDonnell Douglass framework for circumstantial cases, as does the Board.  Accordingly, the Court utilizes this framework in resolving the present motion.

applies to all employment discrimination claims.  Instead, the
elements of the prima facie case vary depending upon the
particular cause of action."  Id.  In general, where the
plaintiff's claim arises from allegations of discriminatory
discharge based on race, the "plaintiff must demonstrate: (1)
that plaintiff is in a protected class; (2) that plaintiff was
otherwise qualified and performing the essential functions of
the job; (3) that plaintiff was terminated; and (4) that the
employer thereafter sought similarly qualified individuals for
that job."  Id.  (citing Clowes v. Terminix Int'l, Inc., 538
A.2d 794, 805 (N.J. 1988)).

Establishing "a prima facie case gives rise to a
presumption that the employer unlawfully discriminated against
the employee."  Bergen Commercial Bank, 723 A.2d at 955 (citing
Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253
(1981)).  After the plaintiff establishes a prima facie case,
"the burden of going forward shifts to the employer to
articulate a legitimate, non-discriminatory reason for the
adverse employment action."  Viscik, 800 A.2d at 833.  If the
employer is able to articulate such a reason, "the burden shifts
back to the plaintiff to show that the employer's proffered
reason was merely a pretext for discrimination."  Id.

Here, Plaintiff, as a white male, is not a member of a

protected class.  Accordingly, to assert a race-based claim
under the NJLAD for discriminatory discharge, Plaintiff relies
on a theory of reverse discrimination.  Under New Jersey law,
the first-prong of the McDonnell Douglas is altered in reverse
discrimination cases to require the plaintiff to show that his
employer was the "unusual employer who discriminates against the
majority".  Erickson v. Marsh & McLennan Co., Inc., 569 A.2d
793, 799 (N.J. 1990) ("Thus, when a complainant is not a member
of the minority, courts have generally modified the first prong
of the McDonnell Douglas standard to require the plaintiff to
show that he has been victimized by an 'unusual employer who
discriminates against the majority.'").[9]  Because Plaintiff is a
white male, he "is a member of the majority [which has not
historically been victimized by discrimination] and [is] not
representative of persons usually discriminated against in the

---

[9]     Initially, Plaintiff's complaint alleged both that he was a
minority within the Atlantic City School District, and
alternatively that if he was "determined to be a member of the
majority, the ... [Board] is the unusual employer who
discriminates against the majority."  (Compl. ¶¶ 6-7.)  In
opposing the Board's motion for summary judgment, Plaintiff
concedes that he proceeding under a reverse race discrimination
theory of the case and expressly relies on the "unusual
employer" standard set forth in Erickson.  (Pl.'s Opp'n 25.)  It
thus appears to the Court that Plaintiff has abandoned his
allegation that he is a minority within the District, and the
Court will not address this contention further.

work place[.]" <u>Erickson</u>, 569 A.2d at 799.  Any alleged discrimination directed against Plaintiff would therefore be considered "unusual."[10]  <u>Id.</u>

Under this modified, heightened standard then, Plaintiff must establish that: (1) background circumstances supporting the suspicion that the Board is the unusual employer who discriminates against the majority; (2) Plaintiff was otherwise qualified and performing the essential functions of the job; (3) that Plaintiff was terminated; and (4) that the Board thereafter sought similarly qualified individuals for that job.  <u>See</u> <u>Gerety v. Atl. City Hilton Casino Resort</u>, 877 A.2d 1233, 1237 (N.J. 2005); <u>Cf.</u> <u>Bergen Commercial Bank</u>, 723 A.2d 944, 959 (N.J. 1999) (setting forth "heightened 'reverse-discrimination' formulation" for prima facie case of discriminatory discharge based on age).

### C.   Termination of Employment by Constructive Discharge

In this case, the Board did not terminate Plaintiff's employment.  Rather, Plaintiff tendered his resignation on July

---

[10]   <u>See also</u> <u>Bergen Commercial Bank v. Sisler</u>, 723 A.2d 944, 957 (N.J. 1999) (explaining that "courts have modified the first element of a prima facie case to require a showing of 'background circumstances support[ing] the suspicion that the defendant is the unusual employer who discriminates against the majority'" because "[t]he presumption of discrimination arising solely from [the] plaintiff's membership in a historically disfavored group is not necessarily justified when the plaintiff is a member of the majority.")

13, 2009 effective July 31, 2009.  (See Pl.'s July 13, 2009
Resignation Letter, Ex. K to Certification of Peter Perla, Esq.
[Doc. No. 58-4]).  However, Plaintiff contends that his
resignation was not done voluntarily but was the result of
conduct by the Board that compelled him to resign.  Because
Plaintiff alleges that he unwillingly resigned from his position
as Assistant Superintendent for Human Resources, the third prong
of the prima facie case regarding termination is analyzed under
the doctrine of constructive discharge.  See Vanartsdalen v.
Twp. of Evesham, No. 05-1508, 2007 WL 2219447, at *7 (D.N.J.
Aug. 2, 2007).

     "Constructive discharge occurs when an 'employer knowingly
permit[s] conditions of discrimination in employment so
intolerable that a reasonable person subject[ed] to them would
resign.'"  Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317
n.4 (3d Cir. 2006) (citing Goss v. Exxon Office Sys. Co., 747
F.2d 885, 887 (3d Cir. 1984)).  As both the Third Circuit and
the New Jersey Supreme Court have explicitly recognized,
"[u]nder the NJLAD, 'constructive discharge requires not merely
severe or pervasive[] conduct, but conduct that is so
intolerable that a reasonable person would be forced to resign
rather than continue to endure it."  Anastasia v. Cushman
Wakefield, 455 F. App'x 236, 240-241 (3d Cir. 2011) (citing

15

Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 628 (2002)).

This is an objective inquiry which requires the Court to determine whether a plaintiff's working conditions became so intolerable – through a showing of "outrageous, coercive and unconscionable" conduct - that a reasonable person in the employee's position would have felt compelled to resign.  See Vanartsdalen, 2007 WL 2219447, at *7 (citing Pennsylvania State Police v. Suders, 542 U.S. 129, 141 (2004)); see also Anastasia, 455 F. App'x at 241 ("The plaintiff must show "outrageous, coercive and unconscionable" conduct that is more egregious than what is required to establish a hostile work environment claim.").  A plaintiff attempting to demonstrate his constructive discharge cannot rely on evidence regarding the impact the conduct at issue had on him because "'the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge.'"  Clowes v. Allegheny Valley Hosp., 991 F.2d 1159, 1162 (3d Cir. 1993) (citations omitted).

In assessing a plaintiff's allegation of constructive discharge, the Third Circuit has instructed district courts to consider a number of factors known as the "Clowes factors" – which are neither absolute nor comprehensive - including: "'(1) a threat of discharge; (2) suggestions or encouragement of

16

resignation; (3) a demotion or reduction of pay or benefits; (4) involuntary transfer to a less desirable position; (5) alteration of job responsibilities; (6) unsatisfactory job evaluations.'" <u>Stremple v. Nicholson</u>, 289 F. App'x 571, 574 n.1 (3d Cir. 2008); <u>see also</u> <u>Clowes v. Allegheny Valley Hosp.</u>, 991 F.2d 1159, 1161 (3d Cir. 1993).

The New Jersey Supreme Court has further observed that "specific considerations are relevant to ... [the] analysis" which place upon the employee "the obligation to do what is necessary and reasonable in order to remain employed rather than simply quit." <u>Shepherd v. Hunterdon Developmental Center</u>, 803 A.2d 611, 627 (N.J. 2002) (citations omitted).   Under Third Circuit precedent, it is therefore "highly significant" to determine whether the employee ever requested to be transferred to another position, ever advised the employer that he would feel compelled to leave if changes regarding the manner in which he was being treated were not made, or attempted to file a grievance prior to leaving his position. <u>Clowes</u>, 991 F.2d at 1161.   These considerations are important to the constructive discharge analysis specifically because "a reasonable employee will usually explore such alternative avenues thoroughly before coming to the conclusion that resignation is the only option." <u>Id.</u>

IV.   <u>**ANALYSIS**</u>

As set forth <u>supra</u>, to survive summary judgment here, Plaintiff must establish a prima facie case of reverse race discrimination under the NJLAD resulting in his constructive discharge by demonstrating: (1) background circumstances supporting the suspicion that the Board is the unusual employer who discriminates against the majority; (2) that Plaintiff was otherwise qualified and performing the essential functions of the job; (3) that Plaintiff's resignation was the result of constructive discharge; and (4) that the Board thereafter sought similarly qualified individuals for that job.[11]

**A.   Insufficient Evidence that the Board is the Unusual Employer who Discriminates Against the Majority**

Here, Plaintiff has failed to identify specific admissible facts and affirmative evidence creating a genuine issue for trial with respect to the first element of his prima facie case - that the Board is the unusual employer that discriminates against the majority.  To "demonstrate 'background

---

[11]   In seeking summary judgment, the Board specifically challenges Plaintiff's ability to satisfy both the first and third elements of his prima facie case.  Plaintiff must satisfy all four elements in order to establish his prima facie case, and therefore, his inability to demonstrate any one of these elements alone supports the entry of summary judgment in favor of the Board.  The Court, however, does not address the second or fourth elements because they do not appear disputed by the parties.

circumstances' sufficient to raise an inference of discrimination[,]" under this standard Plaintiff can either establish that: (1) he "was better qualified for the position than the minority candidate selected or [(2)] that the [Board] had some reason or inclination to discriminate against the majority class." Bergen Commercial Bank, 723 A.2d at 957 (citation omitted); see also Maclean v. Stuart Weitzman Shoes, 863 F. Supp. 2d 387, 391 (D.N.J. 2012).  Even believing Plaintiff's evidence and drawing all reasonable inferences in his favor, Plaintiff has not come forward with specific facts or affirmative evidence that contradicts the evidence presented by the Board with respect to either of these alternative inquiries.

    At the outset, it is undisputed that the Board did **not** select a minority candidate to assume Plaintiff's duties at the time his resignation became effective on July 31, 2009.  Rather, the record is clear that Donna Haye, a Caucasian female then employed as the Assistant Superintendent for Curriculum and Instruction,[12] "assumed the duties of [Plaintiff's former position as] Assistant Superintendent for Human Resources." (Certification of Donna L. Haye [Doc. No. 58-6] ¶ 8; see also

---

[12]    Donna Haye is presently employed as Superintendent for the District.  (Certification of Donna L. Haye [Doc. No. 58-6] ¶ 1.)

Board's SOF ¶ 14; Pl's Reply SOF ¶ 14.)  Haye continued in this
role, performing Plaintiff's job duties for approximately a year
after his departure.  (See Request for Board Action, Ex. 40 to
Merenich Certification, 1) (approving transfer of Diane Saunders
from Supervisor of Basic Skills and NCLB School Improvement to
Supervisor of Human Resources effective August 1, 2010).
Moreover, Plaintiff himself admits that Haye "assumed interim
duties, secondary to her primary function as the ... Assistant
Superintendent of Curriculum and Instruction" after his
resignation.  (Pl.'s Reply SOF ¶ 14.)  Accordingly, because
there is no evidence from which a reasonable jury could conclude
that the Board selected a minority candidate to assume
Plaintiff's duties following his departure, Plaintiff cannot
demonstrate background circumstance to support an inference of
discrimination under that first prong set forth in Bergen
Commercial Bank.[13]

---

[13]   Although Plaintiff admits that Haye assumed his duties, he
contends that this assumption of duties only lasted "until the
Board placed Diane Saunders, an African American female with no
prior Human resources experience, into the [Supervisor] of Human
Resources [position] on a permanent basis." (Id.)  Even
accepting this as true, it does not raise a genuine issue of
material fact as to whether the Board selected a minority
candidate.  This twelve month gap in time from his departure to
the Board's purported "selection of a minority candidate" serves
to cuts off any inference that the Board's conduct was racially
motivated, particularly where the Board first selected another
majority candidate for the role.  The subsequent selection of

Similarly, Plaintiff has also failed to raise a genuine issue of material fact with respect to the second prong of this inquiry – to demonstrate that the Board had some reason or inclination to discriminate against the majority class.  The Board contends, and the Court agrees, that the "record in the instant case establishes that the Board neither discriminated against Plaintiff because he is White nor discriminated against Whites as a whole[.]" (Def. Atlantic City Board of Education's Br. in Supp. of Mot. for Summ. J. [Doc. No. 58-1] (hereinafter, "Board's Br.") 9.)  Here, the Board has presented undisputed, uncontroverted evidence that at all times – before, during, and after – Plaintiff's employment, the Board did not discriminate against majority candidates, particularly at the administrative level.

Initially, the Board submits true and accurate copies of its EEO-5 reports[14] for the years 2000, 2004, 2006, 2008, 2010,

---

Saunders after Haye had assumed those duties for a year is simply too far attenuated from the time of Plaintiff's departure, and no reasonable juror could conclude that the Board, in selecting Saunders at that substantially later date, acted out of any alleged continuing racial bias against Plaintiff who arguably had no contact with the Board during that year.

[14]   See 2012 EEO-5 Survey, U.S. Equal Employment Opportunity Commission, http://www.eeoc.gov/employers/eeo5survey/ (last visited Mar. 27, 2014) (explaining that "[a]s part of its mandate under Title VII of the Civil Rights Act of 1964, the

and 2012.  (Perla Certification ¶ 33.)  These reports
demonstrate that consistently from 2000 through 2012 (a time
period which encompasses the entirety of Plaintiff's
employment), the Board has employed "an equal or greater number
of Caucasians than African Americans as officers,
administrators, and managers" in the Atlantic City School
District.  (Board's SOF ¶ 3; see also Pl.'s Reply SOF ¶ 3.)
Furthermore, at the time Plaintiff was initially hired in July
of 2000, the Board selected Plaintiff to replace an African
American who had previously been performing the duties
associated with this Human Resources position, and Plaintiff was
actually selected **over** three minority candidates who applied for
the position.  (Board's SOF ¶¶ 5-6, 8; see also Pl.'s Reply SOF
¶¶ 5-6, 8.)

Significantly, Plaintiff himself readily admits that the
Board did not discriminate against him when it hired him for the
Assistant Superintendent position in 2000, nor did the Board

---

Equal Employment Opportunity Commission requires periodic
reports from all public elementary and secondary school
districts which indicate the composition for their work forces
by sex and by race/ethnic category.  [The] EEOC collects labor
force data from public elementary and secondary school districts
with 100 or more employees within 50 U.S. states and District of
Columbia.  The reporting provide[s] information on their
employment totals, employees' job category and sex and
race/ethnic groups as of October 1 of the survey year.  The EEO5
survey is conducted biennially in every even-numbered year.")

discriminate against him in approximately 2007 when it retroactively approved him for raises for 2003, 2004, 2005, and 2006.  (Board's SOF ¶¶ 23, 26; see also Pl.'s Reply SOF ¶¶ 23, 26.)  Plaintiff also concedes that at the time of his departure, Plaintiff was the highest paid Assistant Superintendent in 2008 and 2009, receiving an annual salary in excess of $170,000, which constituted a sixty-percent (60%) increase in his salary during his nine year employment.  (Board's SOF ¶¶ 27-28; Pl.'s Reply SOF ¶¶ 27-28.)

Moreover, the Board's conduct regarding personnel decisions subsequent to Plaintiff's departure in July of 2009 similarly demonstrates that the Board did not exhibit any reason or inclination to discriminate against the majority class.  In multiple instances, the Board hired Caucasian individuals ultimately resulting in a greater number of Caucasian employees being appointed to positions of authority in the District than African American employees.  This is demonstrated clearly from the chart below.

| Departing Employee | Position | Date | Race | Replacement Employee | Race | Notes |
| --- | --- | --- | --- | --- | --- | --- |
| Melvin Clark (Retirement) | Assistant Superintendent for Student Services | 8/31/09 | African American | None | N/A | Position abolished |
| Michael Lee (Resigned) | Supervisor of Special Education | 6/30/11 | Caucasian | Pam Hennelly | Caucasian | |
| Debra Brown (Resigned) | Supervisor of Student Services | 6/30/11 | African American | None | N/A | |

| Lisa Mooney | Business Administrator | 6/30/2011 | Caucasian | Steven Moran | Caucasian | |
|---|---|---|---|---|---|---|
| Donna Haye (Promoted) | Assistant Superintendent of Curriculum and Instruction | 6/30/12 | Caucasian | Sherry Yahn | Caucasian | |
| Frederick Nickles (Retirement) | Superintendent of the Atlantic City School District | 6/30/12 | Caucasian | Donna Haye | Caucasian | |
| Gloria Bibb (Resigned) | Purchasing Agent | 6/20/12 | African American | T. Joesph Pontani | Caucasian | 15 |

In opposing summary judgment, Plaintiff does not dispute

the statistical evidence set forth above or the subsequent

personnel decisions by the Board reveal any inclination to

discriminate against the majority class. Rather, Plaintiff

circles back to his argument that there is evidence of the

Board's "improper consideration of race in seeking to replace

[P]laintiff with a favored African-American employee[,]" namely,

---

15    The information set forth in this chart is taken from the
Board's Statement of Facts. (See Board's SOF ¶¶ 30-36; Pl.'s
Reply SOF ¶¶ 30-36.)  To the extent Plaintiff admits the facts
alleged in these paragraphs, but then directs the Court to his
answer denying paragraph 29, the Court notes that the denial in
paragraph 29 referring to conduct by the Board fails to
adequately cite to "the affidavits and other documents submitted
in connection with the motion" that form the basis for the
denial as required under Local Rule 56.1(a).
      As a result of Plaintiff's failure to comply with Local
Civil Rule 56.1(a), the Court "will consider any statement of
fact which was not denied by ... Plaintiff with a citation to
the record as undisputed for the purposes of this motion for
summary judgment."  See Friedman v. Bank of America, N.A., No.
09-2214, 2012 WL 1019220, at *2 n. 6 (D.N.J. Mar.26, 2012)
(citing Stouch v. Twp. of Irvington, No. 03-6048, 2008 U.S.
Dist. LEXIS 54055, at *5 n. 1, 2008 WL 2783338 (D.N.J. July 16,
2008)).

Diane Saunders, who was less qualified than Plaintiff. (Pl.s Opp'n 26.)  Plaintiff further argues that the motivation to replace him with an African American stemmed from the Board's view of Plaintiff as "an impediment to an agenda of hiring and promoting African American friends and relatives."  (Id. at 27.)

Plaintiff also suggests that "[t]he question becomes [-] in deciding whether [the Board] is the unusual employer [who discriminates against the majority -] whether the minority members of the Board were in a position to remove [P]laintiff."  (Id.)  According to Plaintiff, "a reasonable jury could infer that the ... Board ... is the 'unusual employer' who discriminates against the majority precisely because the minority holds power on the Board[.]"  (Id. at 28.)  To support his argument, Plaintiff relies on an April 2008 conversation with the previous Superintendent, Frederick Nickles, wherein Nickles allegedly told Plaintiff that the Board "had the votes to remove him from his position."  (Id.)  Even disregarding the fact that Plaintiff relies entirely on inadmissible hearsay statements allegedly made by Nickles in support of this argument, this contention overlooks the undisputed fact that Donna Haye, a Caucasian woman – a member of the majority - assumed all of Plaintiff's duties at the time of his departure in July of 2009, and continued to do so for more than a year.

Plaintiff fails to establish how a reasonable juror could conclude that the Board discriminated against him as a Caucasian when another Caucasian individual took over his responsibilities for Human Resources.  The Court recognizes that ultimately, an African American, Diane Saunders, did in fact commence nearly identical responsibilities to those Plaintiff maintained during his employment.  However, this did not occur for over a year, and no reasonable juror could conclude that the Board, some twelve months later, finally choose to select Saunders for this position on the basis of some discriminatory intent aimed at Plaintiff simply because he was Caucasian.

Accordingly, the Court finds that Plaintiff has not raised a genuine issue of material fact demonstrating background circumstances sufficient to raise an inference of discrimination supporting his contention that the Board is the unusual employer that discriminates against the majority.  Having failed to establish the first element of his prima facie case, summary judgment in favor of the Board is warranted here.

**B.   Plaintiff was not Constructively Discharged**

However, even if the Court were to assume for that Plaintiff raised a trial issue with respect to the heightened showing required under the "unusual employer" standard, summary judgment in favor of the Board would still be warranted here

because no reasonable juror could find that Plaintiff was
constructively discharged from his position.  With respect to
the Clowes factors set forth supra, the record is clear that at
no time was Plaintiff demoted, nor did he suffer from a
reduction in his pay or benefits.  To the contrary, it is
undisputed that during his nine year employment by the Board,
Plaintiff's salary increased sixty-percent and that he was the
highest paid Assistant Superintendent at the time of his
departure.  (Board's SOF ¶¶ 26-28; see also Pl.'s Reply SOF ¶¶
26-28.)  Moreover, Plaintiff held the same position – Assistant
Superintendent for Human Resources from July 2000 to July 31,
2009 and was not, at any time, involuntarily transferred to a
less desirable position, nor was he subjected to any alteration
of his job responsibilities.  (Board's SOF ¶¶ 8.) The record
clearly reflects that Plaintiff did not receive a single
unsatisfactory job evaluation during the course of his nine year
employment.  Specifically, Plaintiff's supervisor, former
Superintendent Nickles testified that Plaintiff's job
performance evaluations were always "good to excellent."  (Ex. B
to Pl.'s Opp'n, Dep. Tr. of Frederick Nickles, 38:18-23, 39:19-
20; see also Pl.'s Counter SOF ¶ 8; Board's Resp. CSOF ¶ 8.)

Admittedly, Plaintiff has presented some evidence that a
certain Board member was "out to get him" and that allegedly

some Board members wanted to replace him with an African-American.  Plaintiff similarly has offered certain evidence that in approximately April of 2008, Plaintiff was approached by former Superintendent Nickles and asked to consider whether he would allow the Board to effectuate a buy-out of the remainder of the three-year employment contract he entered into with the Board in mid-2007.  Plaintiff was asked to come up with a proposal for the Board's consideration, and correspondence between the Board's solicitor and Plaintiff's personal attorney confirms that the parties entered into negotiations with regard to a potential buy-out in at least by the fall of 2008.  Several witnesses testified to these circumstances as well.  All of this evidence, if believed and drawing all favorable inferences in favor of Plaintiff, could lead a reasonable juror to conclude under the first two Clowes factors that the Board at worst, threatened Plaintiff with discharge, or at best, suggested or encouraged his resignation.

However, the Clowes factors are neither absolute nor comprehensive, and must be assessed in the context of the overarching inquiry for constructive discharge: that is – whether the Board knowingly permitted working conditions so intolerable – by virtue of "outrageous, coercive and unconscionable" conduct – that a reasonable person in

Plaintiff's position would have felt compelled to resign. Moreover, bearing in mind that this is an objective inquiry and that potential jurors could not rely on evidence regarding the impact the conduct had on Plaintiff, whose subjective perceptions do not govern, the Court is not convinced that the modest amount of evidence on these two Clowes factors alone is sufficient to constitute the sort of outrageous, coercive and unconscionable required to demonstrate constructive discharge.[16]

This is particularly true in light of other considerations relevant to the constructive discharge analysis for an NJLAD claim whereby Plaintiff was under "the obligation to do what [was] necessary and reasonable in order to remain employed rather than simply quit." Shepherd, 803 A.2d at 627. Thus, the Court should consider not just the Clowes factors, but all relevant circumstances, including whether Plaintiff ever

---

[16]   Even believing Plaintiff's evidence in this regard, the Court notes that Plaintiff himself testified that despite the alleged conduct by certain members of the Board, he continued to perform his job duties because he believed there were enough other members of the Board who were not trying to remove him. Specifically, Plaintiff explained that "[w]hen I didn't do what they felt that I should be doing, they would threaten me; they would intimidate me; they would tell me they were going to get me, and those kinds of things.  So I just tried to continue to do my job and feel there were enough other members of the board that would, when they looked at situations, maintain some credibility in what was going on."  (Dep. Tr. of Thomas Kirschling, Ex. I to Pl.'s Opp'n, 228:4-11.)

requested to be transferred to another position, ever advised the Board that he would feel compelled to leave if changes regarding the manner in which he was being treated were not made, or whether Plaintiff at least attempted to file a grievance prior to leaving his position. <u>Clowes</u>, 991 F.2d at 1161.  For Plaintiff to succeed on his constructive discharge claim, he must come forward with at least some evidence demonstrating that he acted, as a reasonable employee would have, by exploring alternative avenues before concluding that resignation was his only option.  <u>Id.</u>

On this point, Plaintiff's assertion that he was constructively discharged fails.  Plaintiff readily admits that there "is absolutely no evidence in the record that Plaintiff explored any alternatives to resignation before he chose to quit." (Board's SOF ¶ 12; Pl.'s Reply SOF ¶ 12.)  The record is also devoid of any evidence that Plaintiff ever attempted to lodge any sort of formal or informal grievance, either orally or in written form, regarding his concerns of improper racial discrimination.  There is also no evidence that he reported this discrimination to his supervisor, former Superintendent Nickles. This is particularly telling given that Plaintiff himself testified that during the course of his employment, he understood the grievance procedure to be that he would go to his

supervisor to report and resolve any grievance.  (Dep. Tr. of
Thomas Kirschling, Ex. I to Pl.'s Opp'n, 161:18-24.)  Plaintiff
confirmed that "If there was ever an issue, I went to Mr.
Nickles, my supervisor."  (<u>Id.</u>)  Yet, there is no evidence that
Plaintiff ever went to Nickles with respect to the working
conditions that he now alleges were so intolerable he was
compelled to resign.  Plaintiff attempts to explain away this
failure to raise the issue with Nickles by claiming that he knew
any such effort was futile because Nickles was no longer a
source of support for Plaintiff and was allegedly getting a new
contract with the Board in exchange for helping to move
Plaintiff out.  (Pl.'s Opp'n 29-30.)  However, this explanation
is not sufficient to raise a genuine issue of material fact on
this particular issue.

    Plaintiff's contention that he was constructive discharged
also suffers because the evidence reflects that he had
contemplated retirement at least as early as the time he left
his prior employment in 2000.  Moreover, his letter of
resignation specifically announces that Plaintiff was resigning
because it was his intention to retire.  Nothing in his letter
indicates that he was resigning his position against his will or
as a result of the intolerable working conditions allegedly
created by the Board designed to discriminate against Plaintiff

on the basis of his race.  All of this evidence, when considered in the totality of the circumstances and in light of the numerous Clowes factors that run contrary to a finding of constructive discharge, make clear that no reasonable juror could find that the Board knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person in Plaintiff's position would resign.  Accordingly, Plaintiff has failed to identify a triable issue with respect to the third element of his prima facie case and summary judgment in favor of the Board is appropriate.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant's motion [Doc. No. 58] for summary judgment is granted.  An Order consistent with this Opinion will be entered.


Dated:  March 31, 2014                    s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.

32